Considered by STERNHAGEN and ARUNDELL.

TEXAS & PACIFIC RAILWAY CO., JOHN L. LANCASTER AND CHARLES L. WALLACE, RECEIVERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9863. Promulgated November 28, 1927.

*Chester A. Gwinn, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, for the respondent.

OPINION.

MORRIS: The first assignment of error, the only one urged by petitioner, relates to the action of the respondent in increasing net income of the petitioner for the years 1918 and 1919 by $1,912.34 and $46,514.13, representing so-called donations made to the petitioner by private individuals and corporations located on its right of way for the building and installation of spur tracks and other facilities.

At the request of shippers located on property adjacent to the right of way of the petitioner, spur tracks and other facilities were installed under written agreements entered into between the parties requiring said persons or corporations to pay for and maintain said spur tracks and facilities, and providing further, that the title to that portion of said facilities installed on the right of way of the petitioner should be in the petitioner upon completion. During the years here under consideration, petitioner entered into such agreements and had entered upon its books of account $1,912.34 in 1918 and $46,514.13 in 1919, representing payments to the petitioner by private individuals and corporations for the cost of materials and labor expended by it or by such private individuals and corporations in building spur tracks under the agreements above mentioned. Appropriate book entries as required by the rules of the Interstate Commerce Commission were made to record these transactions, the net effect of which being to debit General Balance Sheet Account No. 701 and credit General Balance Sheet Account No. 779 "Additions to Property Through Income and Surplus." The respondent contends that the acquisition by petitioner of that portion of the spur tracks and facilities installed on its right of way without cost to it, was income derived by it from the furnishing of services such as it was organized to furnish. The petitioner contends, however, that such donations contained no element of gain and do not constitute taxable income within the meaning of the statute and the decided cases.

The petitioner relies upon the *Appeal of Liberty Light & Power Co.*, 4 B. T. A. 155, and *Edwards* v. *Cuba Railroad Co.*, 268 U. S. 628. The respondent's counsel attempts to distinguish the *Cuba Railroad Co.* case, *supra*, from the instant case in that the money and property was acquired from the Government as a subsidy. He also attempts to distinguish the *Liberty Light & Power Co.* case, *supra*, from the instant case by reason of the fact that the Board found that that company was under compulsion to accept properties offered to it by its patrons and by the further fact that the Board held that the additional cost of rendering services to certain country lines of

372

that company was recognized, and it was therefore entitled to charge higher rates for such services. Since the hearing of this case, the Board has promulgated its decision in *Great Northern Railway Co.*, 8 B. T. A. 225, which renders it useless for us to consider the distinctions attempted to be drawn by the respondent's counsel. The facts in the instant case are practically identical with those in the *Great Northern Railway Co.*, *supra*, in which the Board, following the decisions in *Liberty Light & Power Co.* and *Cuba Railroad Co.*, *supra*, held that contributions received in the aid of construction during 1918 and 1919 did not constitute taxable income to the petitioner. Therefore, considering the merits of the instant case and under authority of *Great Northern Railway Co.*, *supra*, we are of the opinion that the respondent was in error in including the sums of $1,912.34 and $46,514.13 in the income of the petitioner for the years 1918 and 1919, respectively.

The second assignment of error affirmatively pleaded in respondent's answer is that he erred in failing to disallow a deduction in the amount of $2,589.55 taken by the petitioner for 1919 representing payment of a certain assessment to the Association of Railway Executives. During the year 1919 there was in existence an organization known as the Association of Railway Executives. Petitioner received a communication from that Association bearing date October 16, 1919, transmitting a report on a proposed plan of national advertising by the Association and for a special assessment of its members therefor. Petitioner received a further communication from that Association bearing date November 1, 1919, assessing it $2 per $1,000 of "standard return," or a total amount of $8,286.56, to be paid one-half immediately and the remainder in two installments during the year 1920. Petitioner paid the Association one-half of the above sum, or $4,143.28, in 1919, which it deducted in the computation of its net income for that year. The respondent now contends that ten-sixteenths of that amount, or $2,589.55, should be disallowed as a deduction on the ground that it was paid to the Association for the purpose of advertising and publicity in connection with pending legislation.

Although the evidence does not disclose when the Association of Railway Executives was organized, we understand that it was in operation some time prior to the taxable years and its purposes and policies were no doubt well established. We do not know, except in a very general way what the business of the Association is, nor for what purpose it was organized. Of course, we know that the $1,000,000 which was assessed was for the purpose of carrying on a certain advertising campaign, but we do not know, even in a general way, just how this money was expended if it was in fact expended.

We are not informed of how this expenditure was treated in the books of account of the petitioner for the year 1919. In order for us to determine whether this sum is an ordinary and necessary business expense within the meaning of the statute, we should know something about the organization to which this money is paid, what its purpose is, what it is in fact doing, its relationship with the petitioner, and we should know something about how this money was in fact spent. Under the authority of *Great Northern Railway Co.*, *supra*, we do not believe that the respondent has offered sufficient evidence to support the affirmative allegation set up in his answer that the amount deducted was not an ordinary and necessary business expense.

At the hearing of this proceeding petitioner's counsel conceded the correctness of respondent's contentions with respect to the third allegation of error affirmatively pleaded in the respondent's answer. Taxable income for the years 1918 and 1919 should therefore be increased by $27,549.38 and $40,113.93, respectively, amounts by which the petitioner over-accrued interest owing by it.

The fourth and last assignment of error, affirmatively pleaded by the respondent's answer, is that he erred in including in income of the petitioner for the years 1918 and 1919 the sums of $47,916.95 and $158,159.37, respectively, representing rental interest on additions and betterments completed during Federal control. The respondent contends that the rental interest on these completed additions and betterments was not accruable in the years 1918 and 1919 but was taxable income in the year 1923, the date of final settlement with the Director General of Railroads.

On July 21, 1919, the Director General of Railroads, acting on behalf of the United States and the President, under the powers conferred by the proclamations of the President, entered into an agreement with the petitioner with respect to the " possession, control, operation and utilization " of its properties, and the compensation therefor, during the period of Federal control. The preamble and recitals of that agreement contained the following provision:

Whereas by proclamation dated March 29, 1918, the President, acting under the Federal Control Act and all other powers him thereto enabling, authorized the Director General * * * to agree with the carriers, * * * upon the amount of compensation to be paid pursuant to law, and to sign, seal, and deliver in his own name or in the name of the President, or in the name of the United States such agreements as may be necessary and expedient with the several carriers * * * respecting compensation.

The amount of compensation guaranteed to the petitioner under the agreement of July 21, 1919, *supra*, is $4,107,432.49, over which amount there is no dispute in this proceeding. The amounts here in

controversy are the payments provided for in subdivision (d) of section 7 of that agreement, which reads:

Upon the cost of additions and betterments, less retirements in connection therewith, and upon the cost of road extensions, made to the property of the Company during Federal control, the Director General shall, from the completion of the work, pay the Company a reasonable rate of interest, to be fixed by him on each occasion. In fixing such rate or rates he may take into account not merely the value of money but all pertinent facts and circumstances * * *.

Section 212(b) of the Revenue Act of 1918 provides that:

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer * * * or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income.

The books of the petitioner were kept on the accrual basis in accordance with the regulations promulgated by the Interstate Commerce Commission.

In *Appeal of Illinois Terminal Co.*, 5 B. T. A. 15, the United States took over the properties of that company under conditions similar to those in the instant case, except that in that case no agreement was entered into as was done here. After the close of the period of Federal control that company filed a claim for *compensation*, and in 1922 it was awarded a sum of $390,818.05, which amount was included in its tax return for 1922. The Commissioner, on the other hand, prorated that amount to the years 1918, 1919, and 1920, the period of Federal control, and assessed additional taxes for those years. The petitioner appealed to this Board from the findings of the Commissioner, and the Board held upon finding that the books were kept on the accrual basis that the amount of compensation received should be prorated to the years there in question.

In *Appeal of New Orleans, Texas & Mexico Railway Co.*, 6 B. T. A. 436, that company did not sign a compensation agreement, but filed an application with the Director General of Railroads for compensation in excess of the "standard return." In 1921 it was finally agreed that the company should be paid compensation in the amount of $1,500,000, annually. That company included in its original return for 1918, $1,101,215.32, the amount of the so-called standard return as certified by the Interstate Commerce Commission, but subsequently to the agreement reached between that company and the Director General of Railroads, that company filed an amended return for that year and included the entire amount of $1,500,000. The Commissioner excluded the difference between those amounts from the return for 1918, and added it to the income of the company for

1921. The Board, in that case, following *Appeal of Illinois Terminal Co., supra,* held that the taxpayer was correct in including the entire amount in the year 1918.

While the two preceding appeals do not involve the question of interest upon costs of additions and betterments, and differ in that respect from the facts of this case, we are convinced that the interest paid under the circumstances of this case should be governed by the same considerations—in fact the interest so provided for is, we believe, in fact and in law, nothing more nor less than a part of the " just compensation " sought to be paid under section 4 of the Federal Control Act as amended March 21, 1918 (40 Stat. 451).

Counsel for the respondent lays great stress upon the proposition that the interest on additions and betterments was a mere claim against the United States, unliquidated as to amount, and, therefore, could not be accrued as income until the amount was actually determined in 1923, but in view of the *Appeals of Illinois Terminal Co.* and *New Orleans, Texas & Mexico Railway Co., supra,* we are not impressed with his contentions. The amounts in controversy in those cases were undetermined until some time after the period of Federal control, and notwithstanding that fact, the Board held that they should be allocated to the years in which earned.

In *Great Northern Railway Co., supra,* the contract between the petitioner in that case and the Director General provided:

SEC. 4. (a) * * * Balances of the above accounts shall be struck quarterly on the last days of March, June, September, and December of each year, and the cash balance found on such adjustments to be due either party shall be then payable and, if not paid, shall bear interest at the rate of 6 per cent, per annum, unless the parties shall agree upon a different rate. * * *.

No quarterly balances were struck between the Director General and the petitioner, and the only settlement of account made between them was the final settlement in April, 1921. The petitioner in that case accrued the sum of $1,570,199.75 for the year 1919, representing the estimated amount of interest due under the provision of the contract aforesaid, which amount it reported as taxable income for that year, but accrued nothing for 1918. The respondent in that case computed the amount of interest due the petitioner from the Director General for 1918 to be $693,005.39 and for 1919 to be $351,764.86 and in the determination of the proposed deficiency in that case, the respondent added $693,005.39 to the taxable income of the petitioner for the year 1918 and reduced the taxable income for the year 1919 in the sum of $1,218,434.89. The petitioner contended in that case that it should be permitted to report its income from this source in accordance with its books. The Board held in that case following *Appeal of Illinois Terminal Co., supra.,* that the respondent was correct in allocating these amounts to the years in which earned.

Under the facts and circumstances in this case and considering the cases herein cited, the sums of $47,916.95 and $158,159.37 were correctly included in the petitioner's income for the years 1918 and 1919, respectively, instead of the year of final settlement as contended by the respondent.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MURDOCK and SIEFKIN.