CONNECTICUT & PASSUMPSIC RIVERS RAILROAD COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25987. Promulgated October 21, 1931.

*O. R. Folsom-Jones, Esq.*, and *J. S. Y. Ivins, Esq.*, for the petitioner.

*J. T. Haslam, Esq.*, for the respondent.

OPINION.

SMITH: The respondent contends for the affiliation of the petitioner and the Newport & Richford Railroad Company on the grounds that the petitioner during all of the years involved owned outright all of the outstanding shares of capital stock of that company. The petitioner contends that it was not affiliated with the Newport & Richford Railroad Company because of the fact that in the lease of June 1, 1887, it assigned all of its interests in the shares of stock of the Newport & Richford Railroad Company to the Boston & Lowell Railroad Corporation, which lease was in turn assigned to the Boston & Maine Railroad Company, and that therefore the affiliation, if any, was of the Boston & Maine Railroad Company and the Newport & Richford Railroad Company.

We are of the opinion that the petitioner in executing the lease in question did not divest itself of its ownership of the stock of the Newport & Richford Railroad Company. Read as a whole, the instrument purports to be no more than an ordinary lease by the petitioner of all of the properties described therein, including the shares of stock of the Newport & Richford Railroad Company, to the Boston & Lowell Railroad Corporation for a period of 99 years. It authorizes the lessee to vote the shares of stock of the Newport & Richford Railroad Company and to receive the dividends therefrom. The lessee could not sell or otherwise dispose of the stock without the consent of the lessor. Counsel for the petitioner and for the respondent have stipulated that:

* * * the Connecticut & Passumpsic Rivers Railroad Company [petitioner] owned 100 per cent of the stock of the Newport & Richford Railroad Company at the date of the original lease herein discussed, and has owned that stock continuously from inception of the lease down to date, and including the years 1921 to 1923, inclusive.

The issue before us is whether the petitioner and the Newport & Richford Railroad Company were affiliated.

Section 240 of the Revenue Act of 1921 provides that:

(c) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially

all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

Notwithstanding that under the terms of the lease certain rights constituting virtual control in the shares of the stock of the Newport & Richford Railroad Company were released to the lessee for the period of the lease, the ownership of the stock remained in the petitioner. As the court said in *Lavenstein Corporation* v. *Commissioner of Internal Revenue*, 25 Fed. (2d) 375:

* * * Assuming that the pledge transfers to the pledgee the right to control the corporation, which is not true in all cases, the statute provides for affiliation where there is unity of either ownership or control, and does not require that there be unity in both. To so hold would be to amend the statute in a vital particular and to open the door to evasions of the act. If affiliation is to be denied because the stock of one of the affiliated corporations has been pledged by its owners, then all that would be necessary to evade the high rates of a graduated tax would be for the interests which owned the stock in the affiliated corporations to pledge the stock held in one of them.

On the basis of the continued ownership by the petitioner of all of the stock of the Newport & Richford Railroad Company there was a literal compliance with the statutory requirement for affiliation.

The remaining issue raises the question whether the premiums received by the petitioner in 1911 upon the sale of its long-term bonds which were outstanding during the years 1921, 1922, and 1923, should be amortized over the life of the bonds and, if so, whether the amortized portions of the premiums allocable to the taxable years constitute taxable income to the petitioner in those years or whether such aliquot portions of the premiums served to reduce the amounts deductible in those years as expenses on account of the annual interest payments by the petitioner on the bonded indebtedness.

In his audit of the consolidated returns filed by the petitioner the respondent included the item of $936.71 representing the aliquot portion of the bond premiums in taxable income for each year. The respondent now takes the position that this item should apply in each year to reduce the deductions allowed on account of the annual interest payments on the bonds, amounting to $17,500; that the deduction allowed corporations by section 234 (a) (2) of the Revenue Acts of 1918 and 1921 of interest paid or accrued within the taxable year on its indebtedness is interest " computed at the effective or true rate rather than at the nominal interest rate."

Section 212 (b) of the Revenue Act of 1921, under the provisions of which the petitioner's income-tax returns for 1921, 1922, and 1923 were filed, provides in part as follows:

The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such

method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *

The Commissioner's regulations prescribed under the Revenue Act of 1921 provide in part, in article 545, under the caption, " Sale and retirement of corporate bonds," as follows:

(2) (a) If bonds are issued by a corporation at a premium, the net amount of such premium is gain or income which should be prorated or amortized over the life of the bonds. * * *

As appears from *Commissioner* v. *Old Colony R. R. Co.*, 26 Fed. (2d) 408, railroad corporations since 1914 have been required by the regulations of the Interstate Commerce Commission to take up in income of each year a prorated portion of the premiums received upon bond issues and have been entitled to deduct from gross income a prorated portion of the discount upon bond issues, regardless of the date the bonds were sold. Under such regulations the petitioner accrued upon its books of account for each of the taxable years $936.71 representing the aliquot portion of the bond premiums involved in this proceeding.

The question before us, therefore, is whether the petitioner, in making its income-tax returns for the taxable years in question, may impugn the correctness of its books of account in so far as they reflect the accrued income. We are of the opinion that it may not, unless we can find that the method employed by the petitioner does not clearly reflect its income. We are not prepared so to find. Surely the accrual of the premiums on bonds in income does not work a greater distortion of the gains of the year than does an accrual of bond discount where the bonds have been sold at a discount. Under the accrual system amounts may be included in the gross income which are not received in the taxable year; and amounts may be deducted which are not paid out within the taxable year. The object of the accounting or bookkeeping is simply to reflect the gain of the taxable year.

This sole question of whether the receipt of premiums upon bond issues constitutes taxable income and whether such income should be spread over the life of the bonds was thoroughly considered by the Board in *Fall River Electric Light Co.*, 23 B. T. A. 168, where we held that premiums received upon a bond issue in 1925 constituted taxable income to be amortized over the life of the bonds.

This was the position taken by the United States Circuit Court of Appeals for the First Circuit in *Commissioner* v. *Old Colony R. R. Co.*, 50 Fed. (2d) 896. The opinion reads in part as follows:

The question to be solved in the case at bar is whether profit arising from the sale of the bonds may be taken into account in determining the expense to

be allowed the Old Colony as a deduction. If the books were kept on a cash basis the deduction allowable would be the interest paid on the bonds, and only that, as that would be the cash disbursement for the year. The Commissioner contends, however, that the real expense in connection with the payment of the interest on the bonds is the amount of it less an aliquot part of the profit, apportioned to the year 1921, amounting to $6,960.64, as the bonds cost the company less than the amount represented by the rate of interest.

There are no authorities precisely in point, and the decided cases in which somewhat similar questions arose relate to companies whose books were kept on a cash basis. See, for instance, *Baldwin Locomotive Works* v. *McCoach*, 221 F. 59; *Chicago & Alton R. R. Co.* v. *United States*, 53 Ct. Claims, 41. But there is one decided case which is the converse of the case at bar. In *Western Maryland Ry. Co.* v. *Commissioner*, 33 F. (2d) 695, a corporation whose bonds were sold at a discount was allowed to figure the proportionate part of the discount as an expense for the year. The same principle applies to the case at bar. If a corporation is allowed to show a greater expense for a given year by adding a proportionate part of a loss on the sale of bonds, there seems no reason to deny to the taxing authorities the right to show a smaller expense by deducting the proportionate part of a gain on a sale of bonds.

Such a result may seem contrary to the case in this circuit of *Commissioner* v. *Old Colony Railroad Company*, 26 F. (2d) 408, which involved a similar state of facts. The decision was that a profit made in 1904, before the passage of the Sixteenth Amendment to the Constitution of the United States, could not be taxed. The court's attention was not called to the fact that the profit made in the early years was not being taxed, but that it was being used only to determine the expense for the year 1921 of the payment of interest on the bonds. This is not a tax but an allocation, under proper accounting methods for books kept on the accrual basis, of the expense chargeable to the year 1921. See *Chicago, Rock Island & Pacific Ry. Co.*, 13 B. T. A. 989, 1029.

Although the court there held that the deduction for the interest payment should be reduced by the aliquot portion of the premium on the bond issue allocable to the taxable year, the result is the same if the aliquot portion of the premium be included in the gross income and the taxpayer is permitted to deduct as an expense the total interest paid on the bond issue during the taxable year. We are of the opinion that the Commissioner's regulations on this point should be sustained.

The same question presented by this proceeding was before us in *Chicago & North Western Railway Co.*, 22 B. T. A. 1407. There we held that the amortized portion of premiums on bonds issued prior to March 1, 1913, should not be included in the gross income of 1920, but that the amortized portion of premiums on bonds issued subsequent to March 1, 1913, should be included in gross income. We there relied on *Commissioner* v. *Old Colony R. R. Co.*, 26 Fed. (2d) 408. In the light of the later pronouncement of the same court upon this question, we sustain the Commissioner's regulation and hold that an aliquot part of the premiums upon bond issues is to be included in the gross income regardless of the date of issue.

In accordance with the stipulation of the parties, we find that there is a deficiency for 1921 of $1,602.38, for 1922 of $21,119.50, and for 1923 of $2,195.39.

Reviewed by the Board.

*Judgment will be entered for the respondent.*