THE NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33799. Promulgated November 23, 1931.

*Chester A. Gwinn, Esq.*, for the petitioner.
*D. A. Taylor, Esq.*, for the respondent.

OPINION.

SMITH: 1. The petitioner admits that our decision in *Chicago & North Western Railway Co.*, 22 B. T. A. 1407, is controlling with respect to its contention that $3,930.31 of the aliquot part of the premiums in issue for each of the years 1921, 1922, and 1923 should be included in gross income of those years. In that decision we held that amortization of premium on bonds issued subsequent to March 1, 1913, shown by petitioner's books of account as an accrual of 1920, constituted taxable income of 1920. The petitioner contends, however, that no portion of the premium received in 1915

from the sale of petitioner's bonds should be added to the petitioner's gross income for the years 1921, 1922, and 1923, or, what amounts to the same thing, that no portion of such premium should be deducted from the discount permitted as a deduction from gross income by the Commissioner's regulations, article 545 of Regulations 62.

Since this proceeding was submitted and since briefs were filed, the Circuit Court of Appeals for the First Circuit, on June 10, 1931, decided the case of *Commissioner* v. *Old Colony R. R. Co.*, 50 Fed. (2d) 896. The court stated:

The question to be solved in the case at bar is whether profit arising from the sale of the bonds [sold between 1893 and 1904] may be taken into account in determining the expense to be allowed the Old Colony as a deduction [for 1921]. If the books were kept on a cash basis the deduction allowable would be the interest paid on the bonds, and only that, as that would be the cash disbursement for the year. The Commissioner contends, however, that the real expense in connection with the payment of the interest on the bonds is the amount of it less an aliquot part of the profit, apportioned to the year 1921, amounting to $6,960.64, as the bonds cost the company less than the amount represented by the rate of interest.

* * * In *Western Maryland Ry. Co.* v. *Commissioner*, 33 F. (2d) 695, a corporation whose bonds were sold at a discount was allowed to figure the proportionate part of the discount as an expense for the year. The same principle applies to the case at bar. If a corporation is allowed to show a greater expense for a given year by adding a proportionate part of a loss on the sale of bonds, there seems no reason to deny to the taxing authorities the right to show a smaller expense by deducting the proportionate part of a gain on a sale of bonds.

Such a result may seem contrary to the case in this circuit of *Commissioner* v. *Old Colony Railroad Company*, 26 F. (2d) 408, which involved a similar state of facts. The decision was that a profit made in 1904, before the passage of the Sixteenth Amendment to the Constitution of the United States, could not be taxed. The court's attention was not called to the fact that the profit made in the early years was not being taxed, but that it was being used only to determine the expense for the year 1921 of the payment of interest on the bonds. This is not a tax but an allocation, under proper accounting methods for books kept on the accrual basis, of the expense chargeable to the year 1921. See *Chicago, Rock Island & Pacific Ry. Co.*, 13 B. T. A. 989, 1029.

The above cited case is confirmatory of the Commissioner's regulations, article 545 of Regulations 62. By including in the gross income of the taxable years 1921, 1922, and 1923 an aliquot part of the premiums received by the petitioner in the years 1915 and 1916 the respondent is not attempting to again tax as income an amount of income upon which the petitioner has already paid income tax, but is simply attempting to reach a correct net income under the methods of accounting employed by the petitioner in keeping its books of account for 1921, 1922, and 1923. Clearly, from an accounting standpoint, it is as correct to include in the gross income an aliquot part of the premium upon bonds issued many years before

as it is to permit a deduction from the gross income of an aliquot part of the discount upon bonds which may have been issued many years before. The Commissioner has not attempted to disallow the deduction from gross income of any part of the discount upon the petitioner's bonds outstanding, regardless of the date of issue. The contentions of the respondent upon this point are sustained. See *Connecticut & Passumpsic Rivers Railroad Co.*, 24 B. T. A. 394.

2. The second issue involved is whether or not the respondent erred in arriving at the net loss of the petitioner for 1921 by including in petitioner's gross income for that year $121,289.72 received by the petitioner from the Director General of Railroads in final settlement of the matters growing out of the period of Federal control of petitioner's properties, as rental interest on the cost of additions and ·betterments made to the petitioner's properties by the Director General during the period of Federal control.

The agreement between the Director General of Railroads and the petitioner, dated April 10, 1919, provided in section 7 (d) that:

Upon the cost of additions and betterments, less retirements in connection therewith, and upon the cost of road extensions, made to the property of the Company during Federal control, the Director General shall, from the completion of the work, pay the Company a reasonable rate of interest, to be fixed by him on each occasion. In fixing such rate or rates he may take into account not merely the value of money but all pertinent facts and circumstances, whether the money used was derived from loans or otherwise, provided that to the extent that the money is advanced by the Director General or is obtained by the Company from loans or from the proceeds of securities the rate or rates shall be the same as that charged by the Director General for loans to the Company or to other companies of similar credit.

Pursuant to the provisions of the agreement, and subsequent to the relinquishment of the petitioner's property by the Director General, and on January 22, 1921, the petitioner filed a claim with the Director General setting forth the amount claimed to be due to and from the petitioner from and to the Director General, among which was a claim of $155,956 due to the petitioner on account of rental interest on the cost of additions and betterments made to petitioner's property by the Director General during the Federal control period. On November 16, 1921, petitioner filed a revised claim in which it made no change in its claim for rental interest. On December 5, 1921, petitioner and the Director General entered into a final settlement of all matters set forth in the claim of the petitioner, by which the Director General allowed to the petitioner the amount of $121,289.72 on its claim for rental interest. In the computation of petitioner's tax liability for 1921 the respondent included in the petitioner's gross income the above amount of $121,289.72. The record does not show whether this amount was taken up on the petitioner's books of ac-

862

count as income of 1921 or of prior years. The petitioner claims that such an item was not income to it in 1921 but that the amount thereof should be spread over the period of Federal control during which the interest was earned by the petitioner.

This issue is decided in favor of the petitioner, in accordance with *Texas & Pacific Railway Co.*, 9 B. T. A. 365; *Chicago, Rock Island & Pacific Railway Co., supra; Old Dominion Steamship Co.*, 16 B. T. A. 264; affd., 47 Fed. (2d) 148; *Indiana Harbor Belt Railroad Co.*, 16 B. T. A. 279; *Kansas City Southern Railway Co.*, 16 B. T. A. 665; *Missouri Pacific Railroad Co.*, 22 B. T. A. 267.

*Judgment will be entered under Rule 50.*