THE COLORADO & SOUTHERN RAILWAY COMPANY,[1] PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21974.   Promulgated December 31, 1937.

[1] This petition is filed in the name of "The Colorado & Southern Railway Company for itself and its affiliated corporations."

*Charles Henry Butler, Esq., John A. Kratz, Esq., J. L. Rice, Esq.,* and *A. C. Scott, Esq.,* for the petitioner.
*E. C. Algire, Esq.,* for the respondent.

OPINION.

SMITH: This proceeding involves income tax deficiencies of the petitioner and its affiliates for the years 1920 and 1921 of $107,940.75 and $49,779.31, respectively. In this opinion the term "petitioner", except where the context plainly shows otherwise, refers to all of the corporations included in the affiliated group. Several of the assignments stated in the petition have been settled by stipulation. The issues before the Board are as follows:

1. Did the respondent correctly disallow the deduction from gross income of $756,004 paid in 1920 for maintenance of ways and structures?

2. Should the tax liability of the affiliated corporations for the year 1920 be computed by applying the equivalent of a rate of 9⅔ percent to the portion of consolidated income subject to tax attributable to companies under Federal control and a rate of 10 percent to the portion of consolidated income subject to tax of those companies not under Federal control, or should a rate of 9⅔ percent be applied to the income of companies under Federal control before deducting losses of companies not under Federal control and from such result a deduction be made for the amount obtained by applying 10 percent to losses of companies not under Federal control?

3. Did the amount received in final settlement with the Director General of Railroads in 1921, representing rental interest on completed additions and betterments, constitute taxable income for the year 1921 or for the period of Federal control?

4. Did the amount received in final settlement with the Director General of Railroads in 1921, representing additional compensation for the use of petitioner's properties during the period of Federal control, constitute taxable income in 1921 or for the period of Federal control?

5. Is petitioner entitled to a deduction for amortization of commissions paid in conection with the sale of its bonds prior to March 1, 1913?

6. Did the amounts received by the petitioner and its affiliated companies during the year 1920 in consequence of an award made by the Interstate Commerce Commission pursuant to sections 5 and 6 of the Act of Congress approved July 28, 1916, Post Office Department Appropriation, 39 Stat. 412, 425, constitute taxable income of the petitioner for 1920?

*Issue No. 1.*

This issue relates to the question whether the respondent correctly disallowed the deduction from gross income of the year 1920 of $756,004 of the total amount paid by the petitioner during that period for maintenance of ways and structures.

The Colorado & Southern Railway Co., the Wichita Valley Railway Co., and the Ft. Worth & Denver City Railway Co. were common carriers engaged in interstate commerce and were required to and did keep their books and accounts under the classification of the Interstate Commerce Commission Acts and the Interstate Commerce Commission regulations during the years 1920 and 1921. Their properties were in the possession of and operated by the United States Government during the period of Federal control (January 1, 1918, to February 29, 1920, inclusive). The corporations entered into standard agreements with the Director General of Railroads on October 10, 1918. The properties were turned back to their owners by the President on March 1, 1920. Final settlement was effected with the Director General of Railroads on November 30, 1921.

Subsequent to Federal control claims for recoupment were filed by the respective corporations with the Director General of Railroads upon the grounds that the properties had been undermaintained during the period of Federal control. In the final settlement of these claims in 1921 the corporations were allowed amounts for undermaintenance of ways and structures during Federal control as follows:

| | |
|---|---|
| Colorado & Southern Railway Co. and Wichita Valley Railroad Co____ | $397,746 |
| Ft. Worth & Denver City Railway Co_____ | 358,258 |
| Total_____ | 756,004 |

During the last 10 months of 1920 the aforementioned corporations expended and charged to maintenance of ways and structures and deducted in the consolidated return for 1920 the following amounts:

| | |
|---|---|
| Colorado & Southern Railway Co_____ | $2,334,499.79 |
| Wichita Valley Railway Co_____ | 397,770.63 |
| Ft. Worth & Denver City Railway Co_____ | 1,763,495.04 |
| Total_____ | 4,495,765.46 |

In the determination of the deficiency for the year 1920, the respondent allowed as a deduction the foregoing amounts expended for maintenance of ways and structures, with the exception of $756,004 representing the amount allowed by the Director General of Railroads for undermaintenance and paid over to the owners in 1921.

The total amounts charged to maintenance of ways and structures during the period March 1 to December 31, 1920, by the Colorado &

Southern Railway Co. and the Wichita Valley Railway Co. were not in excess of the amounts necessary to preserve the normal level of maintenance of the properties as they existed at March 1, 1920. Of the amount so charged by the Ft. Worth & Denver City Railway Co., $166,747.75 was in excess of the amount necessary to preserve the normal level of maintenance of the properties as they existed on March 1, 1920, and constituted improvements and betterments.

In this proceeding the petitioner contends that it is entitled to deduct from the consolidated gross income of 1920 the total amounts spent for maintenance of ways and structures during the period March 1 to December 31, 1920. The respondent, on the other hand, contends that of the amount of $4,495,765.46 paid for such purpose, $756,004 is not a legal deduction from gross income upon the ground that to that extent:

* * * expenditures were made during 1920 to rehabilitate the corporations' properties for the undermaintenance suffered during Federal control and that since the Director General of Railroads paid the corporations for the undermaintenance sustained they were not entitled to deduct the expenditures made to restore the undermaintenance of their properties for which they were compensated.

The Revenue Act of 1918 provides:

SEC. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

SEC. 215. That in computing net income no deduction shall in any case be allowed in respect of—

* * * * * * *

(b) Any amount paid out for * * * permanent improvements or betterments made to increase the value of any property or estate.

The evidence shows that the properties of the three railway companies which were under Federal control during the Federal control period were turned back to those companies by the President on March 1, 1920, in a damaged condition to the extent of $756,004. The railroad companies were reimbursed by the United States for such damage in 1921. No contention is made by the respondent in this proceeding that the receipt of this $756,004 in 1921 constituted taxable income. The respondent contends, however, that the undermaintenance was made good by the railroad companies during the last 10 months of 1920 and that $756,004 of the railroads' expenditures of $4,495,765.46 for maintenance of ways and structures during such period was used for such purpose.

There have been many decisions of the Board and of the Circuit Courts of Appeal bearing upon the question here involved. The leading cases were carefully reviewed by Judge Parker of the United

States Circuit Court of Appeals for the Fourth Circuit in *Southern Railway Co.* v. *Commissioner*, 74 Fed. (2d) 887. His opinion reads in part as follows:

The case of *New York, C. & St. L. R. Co.* v. *Helvering* (App. D. C.) 71 F. (2d) 956, 960, upon which the Commissioner relies, while disagreeing with the Seventh Circuit as to the treatment of maintenance expenditures in excess of normal, approves the rule laid down by this court in the *Norfolk Southern* Case, to the effect that deductions for normal expenditures for maintenance are not to be decreased by reason of the allowance for undermaintenance. The court, in an able opinion by Judge Groner, points out that, *to the extent that expenditures for maintenance are abnormal, they should be treated as expenditures in restoration of capital for which the railroad is reimbursed by the government, but that, to the extent that they do not exceed normal expenditures, they should be treated as deductible expense of the period of operation over which they were incurred.* * * * [Italics supplied.]

We are of the opinion that the excerpt from the cited opinion correctly states the law applicable to this question.

The only remaining question before us on this issue is, therefore, whether the expenditures charged to maintenance of ways and structures by the three railroads served to improve the railroads' properties above the level at which the ways and structures stood on March 1, 1920. The burden is upon the petitioner to show that the expenditures made by it during the period March 1 to December 31, 1920, and charged to maintenance of ways and structures, were not in fact for improvements and betterments.

The petitioner, to meet such burden, has introduced evidence as to the relative cost of materials and labor during the test period (July 1, 1914, to June 30, 1917) and during the last 10 months of 1920. The auditor of expenditures of the Ft. Worth & Denver City Railway Co., and the Wichita Valley Railway Co., produced as a witness at the hearing, testified that he had made a study of the cost of materials and labor used in the maintenance of ways and structures by these corporations during these periods. This study disclosed that the cost of materials and labor so used during the period March 1 to December 31, 1920, was approximately 252 per cent of the cost of such materials and labor during the test period in the case of Ft. Worth & Denver City Railway Co., and approximately 259 per cent of the cost of such materials and labor in the case of Wichita Valley Railway Co. A similar study was made by the chief clerk of the disbursing department of the Colorado & Southern Railway Co. This study showed that the cost of materials and labor expended for maintenance of ways and structures during the period March 1 to December 31, 1920, was approximately 248 per cent of the cost of similar materials and labor during the test period. The general accountant of the Colorado & Southern Railway Co., produced as a

witness by the petitioner, prepared statements for the period March 1 to December 31, 1920, to show what would be the cost of materials and labor for maintenance of ways and structures during that period, according to the standard of maintenance during the test period. In these statements consideration was given to the increase of property maintained and increase in use of property during the period March 1 to December 31, 1920.

On the basis of the foregoing studies, the equated expenditures for an average 10-month period of the test period compare with the actual expenditures for maintenance of ways and structures for 1920 as follows:

| | Average 10-month test period expenditures equated | Difference | | |
| --- | --- | --- | --- | --- |
| | | Actual expenditures for 10 months, 1920 | Excess 1920 expenditures | Excess test period expenditures equated |
| Colorado & Southern Ry. Co. | $2,392,467.17 | $2,334,499.79 | | $57,967.38 |
| Ft. Worth & Denver City Ry. Co. | 1,596,747.29 | 1,763,495.04 | $166,747.75 | |
| Wichita Valley Ry. Co. | 461,300.57 | 397,770.63 | | 63,529.94 |

The respondent objects to the use of the tables prepared for any purpose whatever in connection with this proceeding. His objection appears to be based largely upon the fact that the witnesses responsible for the preparation of the tables did not take into account all of the expenditures which were actually used in the maintenance of ways and structures. The witnesses testified, however, that they were based upon careful studies of materials and supplies which would constitute anywhere from 80 to 95 percent of the materials and supplies used and labor employed. From a careful consideration of all the evidence, we are of the opinion that they afford a satisfactory basis for determining in this case whether or not the expenditures charged to maintenance of ways and structures during the period March 1 to December 31, 1920, were expenses deductible from gross income or expenditures for improvements and betterments of property. Upon the basis of such statements it is apparent that no part of the expenditures made by the Colorado & Southern Railway Co. and the Wichita Valley Railway Co. during the period in question and charged to maintenance of ways and structures was for improvements and betterments. We are therefore of the opinion that the Colorado & Southern Railway Co., and the Wichita Valley Railway Co. are entitled to the deduction from gross income of the entire amounts charged to maintenance of ways and structures during the period. The situation is different, however, with regard to the Ft.

Worth & Denver City Railway Co. It there appears, according to the petitioner's own computations, that there was an excess of expenditures charged to maintenance of ways and structures during the last 10 months of 1920 in the amount of $166,747.75. In the absence of evidence showing that this excess of expenditures was not for improvements and betterments, we are of the opinion that the Ft. Worth & Denver City Railway Co. is not entitled to deduct this amount from gross income.

It is the opinion of the Board, therefore, that the respondent correctly disallowed the deduction from 1920 gross income of $166,-747.75 of the $4,495,765.46 claimed as a deduction on the consolidated return.

### Issue No. 2.

This issue relates to the rate of tax to be applied to the net income shown on the consolidated return for the calendar year 1920. The respondent argues upon the basis of our opinion in *Union Pacific Railroad Co.*, 26 B. T. A. 1126, that the rate should be 9⅔ percent of the net income. In our opinion we noted that common carriers under Federal control had been relieved from the payment of 2 percent of the income tax imposed upon such carriers during the period of Federal control. The months of January and February 1920 were within the period of Federal control. By giving effect to the law we found that the rate of tax upon common carriers under Federal control for the calendar year 1920 was 9⅔ percent.

In this proceeding it is contended that the result reached by assessing a tax at the rate of 9⅔ percent upon the consolidated net income does not reach a correct result, for the reason that one or more of the subsidiaries whose operations are included in the consolidated return were not under Federal control and were operated at a large net loss for the year 1920. In its brief the petitioner contends that the Denver & Interurban Railway Co., one of the subsidiaries of the Colorado & Southern Railway Co., had no net income for 1920 but had an actual loss from operations of $187,731.52, and that:

* * * This loss petitioner is entitled to have deducted from the gross income of the affiliated group. Since the income of the Denver & Interurban (had it received any in 1920) would have been taxable at the rate of 10%, it is the Colorado & Southern's contention that in the computation of the tax of the affiliated group, the deduction on account of the Denver & Interurban loss should be dealt with at the rate of 10%, instead of 9⅔%. In other words, in order to reach a proper and fair result, the ordinary procedure of deducting the loss from gross income and then applying to the balance the income tax rate, should not be followed here; but the rate of 9⅔% should be applied only to the net taxable income of the companies under federal control; then the rate of 10% to the loss of the Denver & Interurban (not under federal control); and the latter result should be subtracted from the former, in order to reach the true tax assessment.

Section 230 (a) of the Revenue Act of 1918 imposes an income tax upon corporations as follows:

(1) For the calendar year 1918, 12 per centum of the amount of the net income in excess of the credits provided in section 236; and

(2) For each calendar year thereafter, 10 per centum of such excess amount.

Subdivision (b) of that section provides:

For the purposes of the Act approved March 21, 1918, entitled "An Act to provide for the operation of transportation systems while under Federal control, for the just compensation of their owners, and for other purposes," five-sixths of the tax imposed by paragraph (1) of subdivision (a) and four-fifths of the tax imposed by paragraph (2) of subdivision (a) shall be treated as levied by an Act in amendment of Title I of the Revenue Act of 1917.

In *Southern Railway Co.* v. *Commissioner*, 80 Fed. (2d) 884, it was held that the income tax liability of a railroad for 1920 during two months of which it was under Federal control was computable by taxing 60/366 of the year's income at "war tax" rate and the remainder at "war tax" plus "normal tax" rate, and not by applying applicable rates to actual income for such period, since the tax was imposed on annual income and the statute required apportionment of the tax and not of income. Applying this principle to the proceeding at bar, it follows that 60/366 of the calendar year net income of the members of the affiliated group under Federal control during the first two months of 1920 is taxable at the 8 percent rate and the balance of the net income of the consolidated group at the 10 percent rate.

The contention of the respondent upon this point, as we understand it, is that this ruling erroneously permits the petitioner to deduct from the consolidated net income taxable at the 10 percent rate the entire net loss for the calendar year of the affiliates not under Federal control during any portion of the year. The respondent apparently contends that 60/366 of the net loss of the non-Federal controlled subsidiaries should serve to reduce the part of the consolidated net income taxable at the 8 percent rate. We are of the opinion that there is no merit in this contention. The reduced rate applies only to the net income of Federal controlled corporations during the period of Federal control, and if the non-Federal controlled subsidiaries had operated at a profit for the calendar year we think it clear that all of such profit would be taxable at the 10 percent rate. The Board holds, in accordance with the opinion of the court in *Southern Railway Co.* v. *Commissioner, supra*, that 60/366 of the calendar year net income of the railroads under Federal control for the first two months of 1920 is taxable at the rate of 8 percent and that the balance of the net income of the consolidated group is taxable at the rate of 10 percent.

*Issue No. 3.*

This issue presents the question of whether the amount received by the petitioner as rental interest on completed additions and betterments in final settlement with the Director General of Railroads constituted taxable income of the year 1921.

In the final settlement negotiated by the Colorado & Southern Railway Co., Wichita Valley Railway Co., and Ft. Worth & Denver City Railway Co., with the Director General of Railroads in 1921, $76,228.64 was allowed to the corporations as rental interest upon completed additions and betterments. This amount was included in taxable income in the consolidated return filed by the corporations for 1921. No part of the amount was included in the taxable income reported by either of the corporations for any prior year nor was any part of it accrued by either of the corporations on its books of account in any prior year, but there was attached to the 1921 return as filed a letter indicating that the amount should be allocated to the years 1918, 1919, and 1920.

In determining the deficiency asserted against the petitioner for 1921 the respondent did not eliminate any part of the aforesaid rental interest from taxable income as reported.

The parties have stipulated:

\* \* \* that if the aforesaid rental interest in the amount of $76,228.64 is judicially determined not to constitute taxable income for the year 1921 and is judicially determined to constitute taxable income for the period of Federal control as contended by the petitioner, then and in that event net consolidated taxable income as shown in the notice of deficiency for the year 1920 should be increased in the sum of $14,325.42, representing that portion of said rental interest applicable to the two months of January and February, 1920.

This question has been decided by the Board in a number of cases. It has been held that the amount received in final settlement with the Director General of Railroads for rental interest on completed additions and betterments constitutes taxable income of the Federal control period. *Texas & Pacific Railway Co.*, 9 B. T. A. 365; *Indiana Harbor Belt Railroad Co.*, 16 B. T. A. 279; *St. Louis Southwestern Railway Co.*, 24 B. T. A. 917; affd. (C. C. A., 8th Cir.), 66 Fed. (2d) 633; *Commissioner* v. *Midland Valley Railroad Co.* (C. C. A., 10th Cir.), 57 Fed. (2d) 1042; *Commissioner* v. *Old Dominion Steamship Co.* (C. C. A., 2d Cir.), 47 Fed. (2d) 148.

In accordance with the stipulation above quoted the net income for the year 1920 should be increased in the amount of $14,325.42.

*Issue No. 4.*

This issue raises the question whether the amount of $25,000 received by the petitioner and its affiliated corporations, whose prop-

erties were under Federal control, in final settlement with the Director General of Railroads in the year 1921 constituted taxable income of that year.

In the final settlement of a claim filed by the Colorado & Southern Railway Co. and its affiliated corporations, which were under Federal control, with the Director General of Railroads in 1921 the corporations were allowed $25,000 representing additional compensation for the use of their properties during the period of Federal control.

No part of the foregoing additional compensation was included in taxable income reported by any of the corporations for the year 1921 or any prior year, nor was any part of said amount accrued by any of the corporations upon their books of account prior to 1921. In determining the deficiency for 1921 the respondent included the additional compensation in taxable income.

It has been stipulated by and between the parties hereto that:

* * * if the foregoing amount of $25,000 is judicially determined not to constitute taxable income for the year 1921 and is judicially determined to constitute taxable income for the period of Federal control, then and in that event consolidated net taxable income as shown in the notice of deficiency for the year 1920 shall be increased in the sum of $1,923.08, representing that portion of the aforesaid sum of $25,000 applicable to the two months of January and February, 1920.

The question presented under this issue, like that under Issue No. 3, has consistently been decided by the Board and the courts contrary to the position of the respondent. These decisions hold that the additional compensation received in final settlement with the Director General of Railroads constituted taxable income of the Federal control period instead of for the year of final settlement. *Commissioner* v. *Midland Valley Railroad Co., supra; Commissioner* v. *Old Dominion Steamship Co., supra; St. Louis Southwestern Railway Co., supra; Gulf, Mobile & Northern Railroad Co.,* 22 B. T. A. 233; *Missouri Pacific Railroad Co.,* 22 B. T. A. 267. The petitioner's contention upon this issue is sustained.

Pursuant to the stipulation the net income for 1920 should be increased in the amount of $1,923.08.

## Issue No. 5.

This issue raises a question as to whether the petitioner is entitled to an additional deduction for amortization of discount, commissions, and expenses on bonds issued prior to March 1, 1913.

During the years 1905 to 1908, inclusive, the petitioner sold its refunding and extension mortgage 4½ percent bonds having a face value of $23,898,900 at a discount of $2,300,237.05. In connection

with such sale commissions were paid of $456,795.06 and expenses were incurred and paid of $61,993.84. The commissions were paid in connection with the sale of $17,032,500 face value of the bonds to Hallgarten & Co. under an agreement dated April 22, 1905, $267,291.54 of the foregoing amount of $456,795.06 having been paid pursuant to the ninth article of the aforesaid agreement and $189,503.52 pursuant to an oral agreement extending the provisions of the ninth article of the agreement to cover the additional payment.

The petitioner concedes that it is not entitled to amortize and deduct any part of the expenses paid and incurred in the amount of $61,993.84 during the taxable years. Respondent admits that the petitioner is entitled to amortize and deduct an aliquot part of the discount sustained in determining taxable income for the years covered by this appeal.

The only question presented to the Board for decision under this issue is whether or not the aforesaid commissions may be amortized and deducted in determining taxable income for the years covered by this appeal.

This issue is decided in favor of the petitioner on the authority of *Union Pacific Railroad Co.* v. *Commissioner* (C. C. A., 2d Cir.), 69 Fed. (2d) 67; affd., *Helvering* v. *Union Pacific Railroad Co.*, 293 U. S. 282.

### *Issue No. 6.*

This issue presents the question of the taxability in 1920 of an amount awarded by the Interstate Commerce Commission as compensation for carrying United States mails.

In 1920 the Colorado & Southern Railway Co., Ft. Worth & Denver City Railway Co., and Wichita Valley Railway Co. received the sums of $37,990.25, $28,957.67, and $4,949.03, respectively, or an aggregate amount of $71,896.95 in consequence of an award made by the Interstate Commerce Commission rendered in Decision No. 9200, *Railway Mail Pay*, 56 I. C. C. 1, made pursuant to the provisions of sections 5 and 6 of the Acts of Congress approved July 28, 1916, Post Office Department Appropriation, 39 Stat. 412, 425. The said Decision No. 9200 of the Interstate Commerce Commission was entered December 23, 1919, but was not served on the interested parties and made public until January 15, 1920.

In the consolidated income tax return filed by the aforesaid affiliated corporations for the year 1920 there was reported as taxable income on account of said mail pay the amount of $72,822.61. The respondent eliminated this amount from taxable income as reported by the petitioner and its affiliated corporations in the consolidated return in arriving at consolidated net taxable income as shown in the notice of deficiency for 1920 on the ground that the amount received

constituted taxable income for the year 1919. In this proceeding the respondent contends that the amount of $72,822.61 constituted taxable income of 1920, in view of the Board's decisions in *International-Great Northern Railroad Co.*, 24 B. T. A. 726; *Pittsburgh & Lake Erie Railroad Co.*, 28 B. T. A. 259; and *New York Central Railroad Co.*, 28 B. T. A. 437.

Since our decisions in the above entitled cases, the Board's decision in *New York Central Railroad Co.*, *supra*, has been reversed by the Circuit Court of Appeals for the Second Circuit, 79 Fed. (2d) 247. In accordance therewith it is held that the amounts received in 1920 for back mail pay were not taxable income of 1920.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*